UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

PAUL E. ZIMAN, DDS,                                        Case No. 23-CV-0834 (PJS/ECW)

        Plaintiff,

v.                                                                        ORDER

UNUM and THE PAUL REVERE LIFE
INSURANCE COMPANY,

        Defendants.

---

      Denise Y. Tataryn, NOLAN, THOMPSON, LEIGHTON & TATARYN, PLC;
Jennifer M. Danish, BRYANT LEGAL GROUP PC, for plaintiff.

      Jacqueline J. Herring, HINSHAW & CULBERTSON LLP; Terrance J. Wagener,
MESSERLI KRAMER P.A., for defendants.

      Plaintiff Paul E. Ziman, DDS, brought this declaratory-judgment action in state

court against defendants Unum Group ("Unum") and The Paul Revere Life Insurance

Company ("Paul Revere") (collectively "Unum").  Notice of Removal ¶ 1, ECF No. 1.

Unum removed the lawsuit to this Court, invoking federal diversity jurisdiction.  Notice

of Removal ¶ 3, ECF No. 1.  Dr. Ziman now moves to remand, arguing that the amount-

in-controversy requirement for diversity jurisdiction has not been met.  Mot. to Remand

¶ 5, ECF No. 8.  The Court agrees and remands this case to state court.

I.  BACKGROUND

Dr. Ziman practiced as an orthodontist until February 2020, when he could no longer work due to bilateral CMC joint degenerative disease.  Compl. ¶ 28, ECF No. 1-1. At the time, Dr. Ziman was covered by a disability-insurance policy (the "Policy") that he had purchased from Unum.  Compl. ¶¶ 6–7, ECF No. 1-1.  Unum accepted Dr. Ziman's claim for disability benefits and began paying monthly benefits.  *Id.* ¶ 29. Later, however, Unum notified Dr. Ziman that his monthly benefit would be reduced on April 2, 2021, when he reached the age of 65.  *Id.* ¶ 31.  Dr. Ziman subsequently filed this lawsuit to challenge Unum's decision to reduce his benefits.

The parties agree that Dr. Ziman continued to be entitled to disability benefits under the Policy after he turned 65, but they dispute the amount of those benefits.  *See id.* ¶¶ 31–33; Defs.' Resp. Mem. at 1, ECF No. 16.  The parties' dispute focuses on two provisions of the Policy:  (1) Policy Schedule II ("Schedule II") and (2) the Lifetime Total Disability Benefit Rider (the "Rider").

Dr. Ziman contends that Schedule II requires Unum to pay the full monthly benefit of $7,500 for the rest of his life, as long as he remains disabled.  Compl. ¶ 33, ECF No. 1-1.  Moreover, according to Dr. Ziman, it is irrelevant for purposes of Schedule II whether Dr. Ziman's disability arose from injury or sickness.

By contrast, Unum argues that Schedule II provides *no* benefits to Dr. Ziman after he turns 65; instead, argues Unum, the Rider is the only provision under which Dr. Ziman is entitled to benefits after his 65th birthday.  *See* Defs.' Resp. Mem. at 2, 5, ECF No. 16.  Under the Rider, the amount of benefits to which Dr. Ziman is entitled depends on whether his disability arose from injury or sickness.  Compl. Ex. A, ECF No. 1-1 at 26.  If from injury, Dr. Ziman is entitled to full monthly benefits of $7,500.  *Id.*  If from sickness, Dr. Ziman is entitled to 20% of the full monthly benefits (or $1,500).  *Id.*  Unum determined that Dr. Ziman's disability was due to sickness, and thus reduced his monthly benefit to $1,500.  *See* Defs.' Resp. Mem. at 2, 5, ECF No. 16.

On March 8, 2023, Dr. Ziman filed this action in state court, seeking a declaration that he is entitled to full disability benefits under Schedule II.  In the alternative, Dr. Ziman sought a declaration that, even if he was entitled to benefits only under the Rider, he was nevertheless entitled to full disability benefits, as his disability arose from injury, not sickness.  Compl., ECF No. 1-1 at 12.  Unum removed the lawsuit to this Court on the basis of diversity jurisdiction.  Notice of Removal ¶ 3, ECF No. 1.

Dr. Ziman now moves to remand.  He contends that the amount in controversy is well below the $75,000 jurisdictional threshold, because at the time of removal he had been paid reduced benefits for only a single month, and thus was due only $6,000.  *See* Mot. to Remand ¶ 6–8, ECF No. 8 (incorrectly stating accrued unpaid benefits would be

$5,000).  In opposing remand, Unum argues that, in calculating the amount in

controversy, this Court must take into account not only the amount that Dr. Ziman was

allegedly owed at the time of remand ($6,000), but the difference between full benefits

($7,500 per month) and reduced benefits ($1,500 per month) over Dr.  Ziman's expected

lifetime—an amount that Unum says is upwards of $1.2 million.  Defs.' Resp. Mem. at 5,

ECF No. 16.  In short, Dr. Ziman's motion to remand turns on whether the amount in

controversy in a dispute over disability benefits includes only benefits allegedly due at

the time of removal or also benefits projected to be due in the future.

## II.  ANALYSIS

As a general matter, a defendant may remove a civil action filed in state court to

federal court if the federal court would have original jurisdiction over the case.  28

U.S.C. § 1441(a).  A federal court has original jurisdiction over a case if there is complete

diversity among the parties and the amount in controversy exceeds $75,000, exclusive of

interests and costs.  28 U.S.C. §§ 1332(a), 1441.  "[T]he party seeking to remove a case to

federal court bears the burden of establishing federal jurisdiction."  *Westerfeld v. Indep.*

*Processing, LLC*, 621 F.3d 819, 822 (8th Cir. 2010) (citations omitted).

Ordinarily, the amount in controversy is determined by examining the good-

faith allegations in the complaint.  *Am. Fam. Mut. Ins. Co. v. Vein Ctrs. for Excellence, Inc.*,

912 F.3d 1076, 1080 (8th Cir. 2019) (citing *Scottsdale Ins. Co. v. Universal Crop Prot. All.*,

*LLC*, 620 F.3d 926, 930–31 (8th Cir. 2010)).  But "[w]here, as here, the complaint alleges

no specific amount of damages or an amount under the jurisdictional minimum, the

removing party . . . must prove by a preponderance of the evidence that the amount in

controversy exceeds \$75,000."  *In re Minn. Mut. Life Ins. Co. Sales Pracs. Litig.*, 346 F.3d

830, 834 (8th Cir. 2003) (citing *Trimble v. Asarco, Inc.*, 232 F.3d 946, 959 (8th Cir. 2000)).

In a case involving a dispute over disability benefits, the measure of the amount

in controversy depends on the nature of the case.  *See Can. Life Assurance Co. v. Wall*, No.

17-cv-02735-JSW, 2017 WL 11528798, at *3 (N.D. Cal. Sept. 6, 2017) (describing cases

addressing the distinction).  When the parties disagree about whether the insurance

contract is valid (such as when an insurer seeks to cancel the policy for fraud), courts

take into account future potential benefits when calculating the amount in controversy.

But when the parties agree that the insurance contract is valid and dispute only the

amount of benefits due under that contract, the amount in controversy is measured by

the amount of unpaid benefits that is allegedly due at time the lawsuit is commenced

(or, if the lawsuit was commenced in state court, at the time the lawsuit was removed to

federal court).[1]

---

[1]*See Colo. Life Co. v. Steele*, 95 F.2d 535, 537 (8th Cir. 1938) ("For breach short of
repudiation or an intentional abandonment equivalent thereto, the damages under such
a [disability] policy as this do not exceed the benefits in default at the commencement of
the suit." (internal quotations and citations omitted)); *Mass. Cas. Ins. Co. v. Harmon*, 88
F.3d 415, 416–17 (6th Cir. 1996) ("[F]uture potential benefits may not be taken into
(continued...)

In this case, Dr. Ziman and Unum agree that the Policy is valid.  They disagree

only about the amount of benefits to which Dr. Ziman is entitled after age 65.  Dr.

Ziman interprets the Policy to entitle him to $7,500 per month; Unum interprets the

Policy to entitle him to $1,500 per month.  This is a run-of-the-mill dispute about the

amount of benefits due under a concededly valid policy.  And thus, according to

longstanding and universal case law, only the benefits that were allegedly due at the

time this case was removed may be considered in determining the amount in

controversy.

Unum attempts to sidestep the obvious by arguing that Dr. Ziman's proposed

interpretation of Schedule II would "invalidate" the Rider since, if Dr. Ziman's

construction is correct, the Rider would (at least arguably) not apply under any

---

[1](...continued)
consideration in the computation of the amount in controversy in diversity actions in
Federal District Courts involving disability insurance where the controversy concerns
merely the extent of the insurer's obligation with respect to disability benefits and not
the validity of the policy." (internal quotations and citations omitted)); *Keck v. Fidelity &
Cas. Co. of N.Y.*, 359 F.2d 840, 841 (7th Cir. 1966) *("Future benefits payable under a
contract of insurance may be used to compute the sum in controversy for jurisdictional
purposes only when the validity of the insurance policy itself, and not merely the
presence or absence of conditions measuring the insurer's liability thereunder, is the
matter in dispute."* (internal quotations and citations omitted)); *see also* 14AA Charles
Alan Wright et al., *Federal Practice & Procedure* § 3710 (4th ed.), Westlaw (database
updated April 2023) (stating that for disability insurance policy claims "only the amount
of the installments unpaid at the commencement of the suit may be taken into
account. . . . The result is different when the validity of the entire insurance contract is
brought into issue, as would be true when the insurer sues to cancel the policy for
fraud.").

circumstances. But this is just a transparent attempt to characterize a coverage dispute

as a validity dispute. One of the most common arguments made during litigation over

the meaning of contract terms is that, if a party's interpretation of a provision were

adopted, that interpretation would render another term superfluous, thereby violating

the interpretative canon that, "[i]f possible, policies should be interpreted to give effect

to all of their provisions, and interpretations that would render any provision

meaningless should be avoided." *Cachet Fin. Sols., Inc. v. Hartford Fin. Servs. Grp., Inc.*,

162 F. Supp. 3d 858, 862 (D. Minn. 2016) (citing *Eng'g & Constr. Innovations, Inc. v. L.H.*

*Bolduc Co.*, 825 N.W.2d 695, 705 (Minn. 2013)). In this (very common) situation, no one

argues that the party whose interpretation is challenged is trying to *invalidate* a term of

the policy.

Likewise, another common canon of construction is that, when conflicting clauses

address the same issue, the more specific of the clauses governs. *E.g.*, *Jerry's Enters., Inc.*

*v. U.S. Specialty Ins. Co.*, 845 F.3d 883, 890 (8th Cir. 2017) ("[A] basic principle of

Minnesota contract law instructs courts to make specific contract language controlling

over general language." (citation omitted)). Again, no one who relies on this canon is

said to be trying to *invalidate* the more general clause. Sometimes two valid provisions

of a valid contract conflict, and the law needs some way to resolve the conflict. Dr.

Ziman is simply asking a court to interpret how the (valid) Schedule II interacts with the (valid) Rider; he is not challenging the *validity* of either clause.

Finally, Unum argues that the declaration sought by Dr. Ziman would "permanently dictate the Policy's contractual terms," making the judgment akin to a judgment regarding validity. Defs.' Resp. Mem. at 8–9, ECF No. 16. But the same could be said of *any* decision that interprets a term in a contract; *all* such determinations "permanently dictate" the meaning of the term. If accepted, Unum's argument would obliterate the longstanding distinction between, on the one hand, disputes over the validity of a disability policy, and, on the other hand, disputes over the meaning of a term in a valid disability policy.

In sum, the parties agree that the Policy is valid and dispute only the amount of benefits that Dr. Ziman is entitled to receive. Thus, the amount in controversy is measured by the amount of unpaid benefits that was allegedly due to Dr. Ziman at the time that Unum removed this case to federal court. As the parties agree, that amount was far below $75,000. Accordingly, this Court does not have diversity jurisdiction because the amount-in-controversy threshold has not been met.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT this action is REMANDED to the District Court for the

Fourth Judicial District, County of Hennepin, State of Minnesota.

Dated:  December 22, 2023

Patrick J. Schiltz, Chief Judge
United States District Court